Milo Steven Marsden (4879)
Michele M. Myer (13815)
**DORSEY & WHITNEY LLP**
111 South Main Street, Suite 2100
Salt Lake City, Utah  84111
Telephone:  (801) 933-7360
Facsimile:  (801) 933-7373

*Attorneys for Park City Group, Inc. and ReposiTrak, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PARK CITY GROUP, INC., a Nevada corporation, and REPOSITRAK, INC., a Utah corporation.<br><br>Plaintiffs,<br><br>vs.<br><br>BRIAN TARDIF, an individual,<br><br>Defendant. | COMPLAINT<br><br>Case No. 2:23-cv-00103-RJS<br><br>Judge: Robert J. Shelby<br><br>Jury Demanded |

Plaintiffs Park City Group, Inc. and ReposiTrak Inc., ("Plaintiff" or "PCG"), by and through its attorneys, for its Complaint against Defendant Brian Tardif ("Defendant" or "Tardif") states and alleges as follows:

## PARTIES

1. Plaintiff Park City Group, Inc. is a corporation duly organized and existing under the laws of the State of Nevada with its principal place of business located at 5282 South Commerce Drive, Murray, Utah.

2. Plaintiff ReposiTrak Inc. is a corporation duly organized and existing under the laws of the State of Utah and a subsidiary of Park City Group.

3. Plaintiff alleges on information and belief that Tardif is a resident of the State of Rhode Island, residing at 106 Halsey Road, Woonsocket, Rhode Island.

## JURISDICTION AND VENUE

4. This is an action in which the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between a citizen of the State of Utah and, upon information and belief, a citizen of the State of Rhode Island. Accordingly, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1).

5. This Court has personal jurisdiction pursuant to Utah Code Ann. §78B-3-205, because, as described more particularly herein, Defendant possesses minimum contacts with Utah, subjecting him to this Court's personal jurisdiction.

6. The Court's exercise of personal jurisdiction over Defendant is consistent with the Constitutions of the United States and the State of Utah.

7. Venue is proper in this judicial district pursuant to, at least, 28 U.S.C. §§ 1391(b)(2), and/or 1391(b)(3).

## GENERAL ALLEGATIONS

### PCG'S BUSINESS

8. Park City Group is a Utah corporation that provides a range of software-as-a-service solutions to its customers nationally. Park City Group, Inc. is the parent company of ReposiTrak Inc., a Utah corporation. ReposiTrak Inc., is a compliance, supply chain, and e-commerce

platform that partners with retailers, wholesalers, and their suppliers, to accelerate sales, control risk, and improve supply chain efficiencies.

9. PCG and ReposiTrak, Inc. have developed a proprietary sourcing, compliance management and advanced commerce platform for retailing used by retailers, wholesalers and consumer goods manufacturers to accelerate sales, control risk and improve supply chain efficiencies.

10. ReposiTrak Inc.'s unique capabilities led it to be selected by the Safe Quality Food Institute (SQFI), to host the industry's largest audit schema. More recently, the platform's compliance capabilities have expanded from food safety to a whole host of other attributes for both food and non-food consumer products.

11. The process of managing the supply chain to ensure a wide array of consumer choices while ensuring that the appropriate amount of stock is on the shelf from an ever growing menu of products is a complex process that involves forecasting consumer demand correctly, ordering the correct amount of product from a distribution warehouse, getting the right allocation to that warehouse from the manufacturer, manufacturing the correct amount of product, and having accurate demand planning for the manufacturers' suppliers to support this effort.

12. PCG has invested millions of dollars engineering and developing its supply chain applications to assist retailer suppliers so that they have the correct amount of a wide variety of products on the shelf, in order to maximize sales, maintain their customer base, and avoid wasteful over-stocks. Using Plaintiff's base-level service, customers can create virtual inventory counts by store and by SKU to diagnose out-of-stocks and overstocked situations. Plaintiff's supply chain solutions enable a retailer to increase sales while at the same time lowering

inventories, enabling the retailer to maximize efficiency by utilizing capital elsewhere.

13. Since its inception, PCG has become a leader in supply chain management applications and has developed business relationships with more than 70 customers throughout the United States.

**PCG'S CONTRACTS AND ECONOMIC RELATIONS**

14. Plaintiff's software products and supply chain applications provide a variety of valuable product offerings and services to its customers.

15. Among these offerings are Scan Based Trading ("SBT") services, which are offered pursuant to Subscription Agreement contracts between the suppliers (hereinafter "suppliers" or "customers") and Plaintiff.

16. As Plaintiff's business has developed, Plaintiff has entered a variety of contracts under which Plaintiff provides electronic data services to suppliers who work with large retailers.

17. Plaintiff contracts with, among others, a variety of suppliers who provide products to CVS Health Corporation ("CVS"). In addition, from 2012 to the end of 2022, Plaintiff maintained a contract directly with CVS in order to facilitate the SBT services Plaintiff provided to its customers.

18. The customers of Plaintiff who are suppliers to CVS include more than 70 businesses. These include, but are not limited to: Birch Farms, Symphony Beauty, Walker Gifts, Golden Grove, Pro's Choice, By The Flowers, For U Mobile, and American Book.

19. Plaintiff has carefully cultivated its customer base and continually provides valuable offerings to its customers.

**TARDIF'S INTENTIONAL INTERFERENCE IN PCG'S BUSINESS**

20. In 2022, CVS began developing a set of software services which are in some ways similar to the SBT services Plaintiff provides its customers.

21. Tardif is an employee of CVS who works as a "Supplier Collaboration Advisor" for CVS. As a Supplier Collaboration Advisor, Tardif's duties and responsibilities include coordinating with suppliers to provide them sales-related data. CVS's suppliers use this data to maximize their sales and revenue. Many CVS suppliers have contracts with Plaintiff under which Plaintiff provides analytical and other services of the sales-related data that CVS provides for its suppliers.

22. Tardif knows, and has known for many years, of Plaintiff's contractual relationships with CVS suppliers.

23. In the last quarter of 2022, Tardif began to interfere with Plaintiff's contracts and other economic relationships with its customers who supply products to CVS including, but not limited to: Birch Farms, Symphony Beauty, Walker Gifts, Golden Grove, Pro's Choice, By The Flowers, For U Mobile, and American Book.

24. Following the announcement of the CVS's own SBT services, Tardif increased his interference with Plaintiff's contracts and other economic relationships for the purpose of inducing suppliers, who were contractually obligated to Plaintiff, to breach their contracts, or to make compliance with their contracts more difficult, all of which has caused Plaintiff damages in excess of $1,000,000.

25. When contacted by counsel for Plaintiff, CVS has asserted that they are not and have not directed the conversion of Plaintiff's customers; however, Tardif is acting contrary to

this direction and has continued to undermine Plaintiff's relationships with its customers via improper means, including but not limited to misrepresentation and deceit.

26.     The means by which Tardif has interfered, and continues to interfere include, but are not limited to: (i) falsely informing suppliers that Plaintiff's services to them had been or would be terminated, when in fact, Plaintiff and the suppliers had valid and binding contractual agreements, (ii) wrongfully withholding sales data from Plaintiff's customers, (iii) wrongfully withholding sales data from Plaintiff despite being validly directed by the suppliers to send this data to Plaintiff; (iv) putting up false and concocted "problems" in order to make Plaintiff's performance of its contracts more difficult and expensive; (v) sending incomplete sales data files to suppliers and to PCG following requests from suppliers to send complete data files, (vi) informing suppliers that in order to get paid they must set up services with CVS instead of Plaintiff, and (vii) directing customers of PCG who have contractual relationships with PCG to third-party EDI providers to access services in place of PCG.

27.     Beginning on or about January 25, 2023, Tardif caused a large number of Plaintiff's customers to be unable to access their sales data from CVS. This situation remains unaddressed to this day. Given the importance of having data that is both current and available to Plaintiff's customers, Tardif's actions have directly and immediately harmed Plaintiff's customers, and its relationships with its customers

28.     Based on instructions from CVS, Plaintiff has made numerous attempts to obtain the operative sales data from Tardif as an agent for its customers. Tardif has unjustifiably refused to provide the data to Plaintiff.  Tardif also has refused and continues to refuse to provide data directly to Plaintiff's customers, when those requests come from Plaintiff, acting as an agent for

its customers. In addition, Tardif is directing customers of PCG who have contractual relationships with PCG to third-party EDI providers to access services in place of PCG, and sending PCG's customers' data to those third-party EDI providers, further interfering with PCG's contractual relations.

29. Tardif's interference is contrary to industry and ethical standards. In addition, Tardif's interference is improper because he (i) knew the suppliers he targeted were parties to Subscription Agreement contracts with Plaintiff; and/or (ii) knew that the suppliers he targeted owed a duty to Plaintiff under the terms of the Subscription Agreement.

30. Upon information and belief, Tardif withheld the sales data from Plaintiff and Plaintiff's customers for the purpose of inducing customers to breach their contracts with Plaintiff.

31. Tardif's withholding of sales data has actually induced Plaintiff's customers to attempt to terminate their contracts with Plaintiff.

32. Tardif's interference has resulted or will result in PCG's extensive pecuniary loss, felt within the State of Utah, PCG's principal place of business.

33. One example of Tardif's interference with PCG's contractual relations and prospective contractual relations is with PCG's relationship with Symphony Beauty. Symphony Beauty is a customer of PCG that has requested its sales information and Tardif has interfered with this contractual relationship. Symphony is an SBT provider that directed its information to be sent to PCG. Symphony had explicitly indicated that it desired to continue using PCG's services prior to interference from Tardif.  Following a meeting with Tardif, Symphony's

information was sent by Tardif to a third-party EDI provider instead of PCG. Symphony has now stated that the PCG relationship is redundant due to the third-party EDI provider's involvement, coordinated by Tardif. The contract is at risk of being terminated by Symphony group.

34. Due to Tardif's actions, Plaintiff faces the risk that further customers will be induced to breach their contracts with Plaintiff, or will be dissuaded from entering into further contracts for Plaintiff's services. Plaintiff has a number customers which have already expressed frustration with the circumstances that have arisen as a result of Tardif's interference.

35. Plaintiff's customer Pro's Choice is one such customer. Since January 25, 2023 Tardif began withholding Pro's Choice sales information from PCG.

36. Since at least January 31, 2023, Pro's Choice Senior Vice President, Kurt Roland has been in consistent and repeated contact with Tardif. Despite this, Tardif has withheld, and continues to withhold sales data, creating an exigent circumstance for Pro's Choice, as they rely on their sales data to operate their business on a continuing basis.

37. On February 1, 2023, Roland corresponded with Tardif and directed him to make the sales data available to and to coordinate with PCG, as Pro's Choice has a binding contract with PCG. Despite this direction, Tardif explicitly refused, stating: "CVS is not going to work with PCG on this. We push data to VAN (sic) of your choice, in this case PCG. Once corrected the files will go through normal EDI path."

38. On February 6, 2023 and February 7, 2023 Pro's Choice continued to correspond with Tardif and again directed him to send the data to PCG. On or about February 7, 2023 Tardif begrudgingly sent obviously incomplete data files to PCG. Without complete and accurate sales data files, PCG's business with its customers cannot function, as Tardif is well-aware.

39. On information and belief, Tardif is sending incomplete sales data files willfully and maliciously for the purpose of disrupting Plaintiff's existing contracts.

## FIRST CLAIM FOR RELIEF

### (INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS)

40. Plaintiff incorporates each and every previous paragraph as if set forth fully herein.

41. As detailed above, customers including, but not limited to Birch Farms, Symphony Beauty, Walker Gifts, Golden Grove, Pro's Choice, By The Flowers, For U Mobile, and American Book entered into the Subscription Agreement contracts with Plaintiff, which are valid and binding.

42. Tardif knows of the existence, terms, and enforceability of the Plaintiff's contracts with its customers, including, but not limited to Birch Farms, Symphony Beauty, Walker Gifts, Golden Grove, Pro's Choice, By The Flowers, For U Mobile, and American Book.

43. Tardif has intentionally and improperly interfered with the Subscription Agreement contracts by, among other things informing suppliers that Plaintiff's services would be terminated, when in fact, Plaintiff and the suppliers had valid and binding contractual agreements, withholding sales data from Plaintiff's customers, withholding data from Plaintiff which suppliers have directed Defendant to send to Plaintiff, sending incomplete sales data files to PCG following requests from customers to send complete data files, and informing suppliers that in order to get paid they must set up services with CVS instead of Plaintiff.

44. Tardif through improper means inasmuch as his actions were false, contrary to

law, and/or contrary to industry and ethical standards

45. Tardif's intentional acts were designed to induce customers to breach the contractual relationship with Plaintiff.

46. As a direct and proximate result of Tardif's intentional acts, customers were induced to breach the Subscription Agreement contract with Plaintiff, and to, among other things, breach the contracts with Plaintiff to enter into contracts with CVS for SBT and other services.

47. As a direct and proximate result of Tardif's intentional acts, Plaintiff's and its customers' performance of their contracts was rendered more difficult and more expensive.

48. As a direct and proximate result of Tardif's intentional acts, Plaintiff's contractual relationships with its customers have been actually disrupted.

49. As a direct and proximate result of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial.

50. Tardif was not justified in interfering, nor was he privileged to interfere.

51. Tardif's conduct was willful and malicious, justifying an award of punitive damages.

## SECOND CLAIM FOR RELIEF

**(TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)**

52. Plaintiff incorporates each and every previous paragraph as if set forth fully herein.

53. As detailed above, Tardif is now aware, and has long been aware, that Plaintiff

has a practice of entering into Subscription Agreement contracts with its customers for use of its Scan Based Trading systems.

54. Tardif had knowledge of Plaintiff's existing Subscription Agreement contract with its customers, which include, but are not limited to: Birch Farms, Symphony Beauty, Walker Gifts, Golden Grove, Pro's Choice, By The Flowers, For U Mobile, and American Book.

55. Moreover, Tardif knew and understood the importance of this practice and the contracts to Plaintiff's business.

56. Plaintiff's contracts are intended to provide a reasonable expectation of profit for Plaintiff, in addition to prospective economic advantage for Plaintiff over its competitors.

57. The means by which Tardif has interfered, and continues to interfere include, but are not limited to: (i) falsely informing suppliers that Plaintiff's services to them had been or would be terminated, when in fact, Plaintiff and the suppliers had valid and binding contractual agreements, (ii) wrongfully withholding sales data from Plaintiff's customers, (iii) wrongfully withholding sales data from Plaintiff despite being validly directed by the suppliers to send this data to Plaintiff; (iv) putting up false and concocted "problems" in order to make Plaintiff's performance of its contracts more difficult and expensive; (v) sending incomplete sales data files to suppliers and to PCG following requests from suppliers to send complete data files, (vi) informing suppliers that in order to get paid they must set up services with CVS instead of Plaintiff, and (vii) directing customers of PCG who have contractual relationships with PCG to third-party EDI providers to access services in place of PCG.

58. As a direct and proximate result of Tardif's intentional acts, certain suppliers have been prevented from entering into further contractual relationships with Plaintiffs, as well as

damaging and negatively affecting the integrity, stability, and economic advantage created for Plaintiff through its Subscription Agreement program.

59. If not for Tardif's intentional acts, such suppliers would have entered into further Subscription Agreement contracts with Plaintiff.

60. As a direct and proximate result of Tardif's intentional acts, such suppliers have attempted to cancel contracts with Plaintiff or have stopped making contractual payments to Plaintiff.

61. As a direct and proximate result of Tardif's intentional acts, Plaintiff has been damaged in an amount to be proven at trial.

62. Tardif was not justified in interfering, nor was he privileged to interfere.

63. Tardif's conduct was willful and malicious, justifying an award of punitive damages.

## THIRD CLAIM FOR RELIEF

### (UNJUST ENRICHMENT)

64. Plaintiff incorporates each and every previous paragraph as if set forth fully herein.

65. Upon information and belief, Tardif receives compensation from CVS in the form of commissions or other financial benefit based upon supplier conversions from Plaintiff's services to the CVS SBT services.

66. As detailed above, Tardif has received or will receive financial benefit related to his conversion of Plaintiff's existing contracts to the CVS system.

67. Tardif has unjustly retained these benefits at Plaintiff's expense.

68. As a direct and proximate result of Tardif's unjust enrichment, Plaintiff has been damaged in amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

69. For all actual, compensatory, and punitive damages in an amount to be fairly and reasonably set by the trier-of-fact, in an amount not less than $1,000,000.00.

70. For preliminary and permanent injunctive relief ordering that (1) Tardif cease and desist the interference with any of Plaintiff's current and prospective customers; and (2) preserve all documents, including those in electronic form, regarding the allegations in this lawsuit;

71. For the costs of suit, including a reasonable attorney's fee according to applicable law; and

72. For such other and further monetary, equitable, and injunctive relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

DATED this 10th of February, 2023.            **DORSEY & WHITNEY LLP**

 /s/ *Milo Steven Marsden*
Milo Steven Marsden
*Attorneys for Park City Group, Inc. and ReposiTrak, Inc.*